**UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YIYI LIANG,<br>    Plaintiff,<br>v.<br><br>EUGENE WANG,<br>PRESIDENT AND FELLOWS<br>OF HARVARD COLLEGE.<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No.: 1:26-cv-12880 |

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

The Plaintiff, Yiyi Liang ("Liang"), came to work for the Defendant, the President and Fellows of Harvard College ("Harvard"), in its Cognitive Aesthetics Media Lab ("CAMLab") in June, 2023. She applied for a position as a fellow, enticed by the work of the Defendant, Professor Eugene Wang ("Wang") (collectively "the Defendants") an employee and agent of Harvard. Wang advertised the position as a "fellow" position in which Liang could conduct independent academic research. The position was a yearlong position with an option for Wang to renew it each year.

Before being awarded the position, CAMLab gave Liang work to do, implying that it was required if she wanted to get the position. Liang did the work, but she was never paid for it.

Once hired by CAMLab, Liang did no independent research. Rather, she performed administrative and operational tasks to run CAMLab and was Wang's personal assistant. The nature of her work entitled her to overtime under the Fair Labor Standards Act, but although Liang regularly worked over 40 hours in a single workweek, sometimes working 80-100 hours in a week, the Defendants never paid her overtime. When Liang worked long hours for CAMLab

and Wang, her hourly wage fell below the Massachusetts minimum wage M.G.L. c. 151 §1 ("Minimum Wage Act").

Wang expected CAMLab's employees to work whenever he needed them and for as long as he needed them, requiring work late at night, on weekends, and on holidays. He praised an employee for working up to the last moment before she gave birth.  He praised Liang directly for working long hours.  Liang was told that CAMLab employees "had no vacation". Wang's wife, Jie Lu ("Lu"), ran the operations of CAMLab and both she, and the Human Resources liaison for CAMLab, Lorna Campos, enforced Wang's work demands.  Campos instructed Liang not to record overtime hours she worked.

The nature of the position was not only not what Wang advertised, it also ruined her health.  Liang ended up in the hospital in November 2024, collapsing because of the overwork and stress.  She had to take leave under the Massachusetts Paid Family and Medical Leave Law ("PFML"), both full time and intermittently.  The Defendants violated the PFML by requiring her to work while on full time leave.

Liang pressed Wang to reduce her hours, particularly the time she spent late at night and on weekends, complaining that she was worked too many hours without adequate pay.  He did not.  When she complained about her long hours to Harvard's human resources, no action was taken to stop Wang.  Her complaints angered Wang and Lu.   When she worked the long hours without complaint, Wang renewed her position.  However, after her complaints and her PFML leave, Wang ended her employment, telling her that he was restructuring CAMLab.  Wang lied. He did not restructure; he gave her work to two others, simply replacing her.  Wang ended Liang's' employment in retaliation for her complaints of working overtime without being paid and because she took leave under the PFML.

2

Liang brings this action against Wang and Harvard for violations of the Fair Labor Standards Act 29 U.S.C. §§201-219 ("FLSA"), for retaliating against her when she complained about wage law violations, for violations of the Massachusetts Paid Family and Medical Leave Law ("PFML") M.G.L. c 175M, for violations of the Massachusetts Minimum Wage Act M.G.L. c. 151 §1 ("Minimum Wage Act"), and for violations of the common law.

## JURISDICTION AND VENUE

1.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

2.     This Court has jurisdiction over state law claims asserted here pursuant to 28 U.S.C. § 1367(a).

3.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

4.     The Plaintiff, Yiyi Liang ("Liang"), is an individual who, at all times relevant to this complaint, resided in Boston, Suffolk County, Massachusetts. Liang was an employee of Harvard, as defined by the Federal Labor Standards Act ("FLSA") and the Massachusetts Paid Family and Medical Leave Act ("PFML") and based on her duties and responsibilities was entitled to be paid 1.5 times her regular rate as required by 29 U.S.C. 207.

5.     The Defendant, President and Fellows of Harvard College ("Harvard"), is an institution of higher education duly formed under the laws of Massachusetts with its principal place of business in Cambridge, Middlesex County, Massachusetts.  At all times relevant to this complaint, Harvard was Liang's employer as defined by the FLSA 29 U.S.C. § 203(d) and the

PFML and had the ability to fire Liang, controlled her schedule, determined her rate and method of payment, controlled her work assignments, conditions, and hours of her work.

6.      The Defendant, Eugene Wang ("Wang"), is an individual who is a Professor of Asian Art at Harvard University.  Wang founded and was the Director of CAMLab which is located in Cambridge, Middlesex County, Massachusetts.  Wang founded CAMLab for the benefit of Harvard, is an employee and agent of Harvard, and acted directly in Harvard's interest as defined by the FLSA 29 U.S.C. § 203(d) and the PFML.  At all times relevant to this complaint, Wang was Liang's supervisor, had the ability to fire Liang, controlled her schedule, determined her rate and method of payment, controlled her work assignments, conditions, and hours of her work, and had individual responsibility for management of CAMLab.

**FACTS**

7.      In 2019, Liang graduated from Harvard's School of Design with a master's degree.  She went to Germany on a fellowship to further her academic research from September 2020 to July 2022.

8.      In 2018 Wang founded the Chinese Arts Media Lab, later known as the Cognitive Aesthetics Media Lab ("CAMLab"), as an interdisciplinary, experimental art and media research and exhibition center in Harvard's Faculty of Arts and Sciences.  Wang represents CAMLab as a research and creative space that hosts "visiting scholars".

9.      Wang is an employee of Harvard, who is allowed to hire employees for Harvard, including into the CAMLab. By founding and operating CAMLab in the Harvard Faculty of Arts and Sciences, Wang acted directly in the interests of Harvard and meets the definition of "employer" under 29 U.S.C. § 203.

4

10.     CAMLab and Wang sponsored visas for dozens of international scholars and students from China supporting their entry into the United States and their stays on campus. CAMLab charges a fee to its scholars which is significantly more than many similar programs.

11.     In 2023, Liang applied to CAMLab to be a fellow.  The description of the position from CAMLab represented that it was an independent research position through which she could focus on her area of expertise, the artistic exchange between China and Europe in modern period. Liang applied because it offered her the opportunity to conduct independent research on art and architecture.

12.     CAMLab offered her the fellow position, and Liang accepted it.  She was set to begin working in June 2023.  The position was a yearlong appointment that could be renewed at the end of each year. Liang agreed to work for Wang at CAMLab, relying on the representation that she would be conducting research into her areas of study, and paid for her work.  Liang's acceptance of the research position formed a binding agreement between all parties.  Wang formed an agreement with Liang to employ her in an exempt, research-based position.  Wang's action also bound Harvard to honor the agreement.

13.     Harvard paid Liang as a Harvard employee. For her first year of employment, she was paid a salary of $55,000.

14.     When Liang was hired, Wang's wife, Jie Lu ("Lu") was the Chair of CAMLab's Advisory Board.  In addition to that role, she had a role of manager at CAMLab, directing projects, identifying candidates for CAMLab's visiting scholars' program, taking part in visiting scholar interviews, and often flagging applicants to skip the interview process.  Lu was heavily involved in the day-to-day operations of CAMLab, set and enforced its employment rules, and directed and assigned Liang's work.  She thus had control over Liang's employment.

15.     Lorna Campos ("Campos"), the Financial and Human Resources manager, also oversaw the day-to-day running of CAMLab and set and enforced its employment rules. Campos is an employee and agent of Harvard.  She, with Wang and Lu, supervised Liang, directing the tasks Liang completed, how she completed them, and when they were to be completed.

16.     Wang, Campos, and Lu controlled the rate at which Liang was paid and whether she was paid.  They had control over how she was classified as an employee for the purposes of the FLSA 29 U.S.C. § 203.

17.     During the weeks before Liang was offered employment by CAMLab in 2023, Wang, Lu, and CAMLab Campos assigned her work: managing the production of Wang's personal website, procuring art books for Wang, and assisting CAMLab with recruitment.  The assignments were presented as a test of whether she could do the requirements of the position, so Liang did the work.  She was not paid for the work she performed.  Failing to pay Liang for her work violated the FLSA 29 U.S.C. § 206 and the Massachusetts Minimum Wage Act M.G.L. c. 151 §1

18.     Shortly after joining CAMLab Liang realized that the reality of her position was not conducing independent research academic using her expertise.  Instead, among other things, she acted as Wang's publishing assistant, handling and providing administrative support such as answering applicant questions, updating program information online, evaluating applications, and onboarding new scholars for CAMLab's visiting scholar program.  She also collected and printed articles that Wang requested, relayed messages between Wang and his publishers, tracked payments to translators, and created binders for Wang's research.  Wang's wife Lu, Wang, and Campos assigned her this work, directed this work, and controlled the flow of this work.

6

19.    None of Liang's work required her advanced knowledge about art, any creativity, independent judgement or use of discretion in matters of significance.

20.    From the beginning of Liang's tenure with CAMLab in 2023, Wang's words and actions made it clear that working over 40 per workweek, without extra compensation, was a condition of employment with CAMLab.

21.    Wang informed CAMLab employees that "everyone must work hard and contribute".  As an example of working hard and contributing, he praised an employee who continued to work right up to the moment of her delivery of her child.

22.    Lu informed Liang that CAMLab staff did not have vacation and were expected to be available for work at any time.

23.    Wang contacted Liang outside of regular working hours with work assignments for him personally and for CAMLab, regularly texting Liang at all hours of the day with tasks and expecting her to respond promptly and immediately.  He required her to work weekends, holidays, and evenings.

24.    For example, on one occasion, Lu instructed Liang to go to the lab on a Sunday to retrieve a bag for a friend of Lu. On another occasion, Liang had to leave a movie theatre to respond to Wang's demands.

25.    Wang specifically expressed approval when Liang worked late.

26.    Throughout her time at the CAMLab, starting in 2023, Liang's workweek regularly exceeded 40 hours, sometimes rising as high as 65 hours and often rose to 80-100 hours per week. During those weeks, her salary, when divided by the total hours she worked throughout those weeks, fell below the applicable minimum wage rate, violating the Massachusetts Minimum Wage Act.

27.     Based on the work Liang did for Harvard and for Wang, she was not a bona fide executive, administrative or professional employee.  The type of work she did for CAMLab and Wang and her regular work beyond 40 hours in a week obligated Harvard and Wang to pay her overtime under the FLSA 29 U.S.C. § 207.  Neither Wang nor Harvard was entitled to an exemption from the legal obligations to pay Liang overtime.

28.     Despite the requirement that she be paid overtime, Campos told Liang not to record overtime hours she worked.  Requiring Liang to falsify the record of her hours to deliberately hide her overtime is a deliberate, knowing and willful violation of the FLSA 29 U.S.C. § 207 and demonstrates Harvard and Wang's lack of good faith, and willful violations of the law.

29.     Wang and Harvard knew that Liang was working beyond 40 hours per workweek for CAMLab and knew or should have known that she was not exempt from the FLSA requirement to pay overtime.  Wang and Harvard also knew that Liang was doing non-exempt work and that the number of hours she was working caused her hourly wage to fall below the applicable minimum wage.

30.     Wang was aware, and approved of, Campos' instructions not to record overtime hours.

31.     Despite his awareness, Wang falsely claimed to others, outside CAMLab, that Liang's work directly related to her individual and academic research.  Wang claimed this deliberately to hide that Liang was working in a non-exempt administrative capacity, using none of her specialized knowledge, no discretion, and uninvolved in the direction of CAMLab. Wang's hiding what Liang was doing illustrates that refusing to pay her for her overtime work was deliberate, knowing, and intentional, not a good faith mistake.

32.    Harvard willfully failed to notify Liang of the requirements of the employment laws to facilitate their exploitation of her labor in violation of the FLSA and supporting regulations.

33.    Based on Wang's, Lu's, and Campos' actions, Harvard had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and a half to employees like Liang for all hours worked in excess of forty (40) hours per workweek, violating the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

34.    Neither Wang nor Harvard ever paid Liang for the hours she worked over 40 per workweek. Instead, she was paid a salary of $55,000 for her work in the CAMLab and required to work for any number of hours.  Wang and Harvard's requirement caused Liang's wages to fall below the applicable minimum wage.

35.    Wang and Harvard deliberately, knowingly and willfully failed and refused to pay Liang her lawfully due overtime compensation of one and one half times (1.5x) of her regular rate of pay for all hours worked over forty (40) in each workweek in violation of the FLSA 29 U.S.C. § 207.

36.    Wang and Harvard supplied Liang with false information, that she would be a fellow, conducing research in her field, to convince her to apply for a position with CAMLab. Liang reasonably relied on the representations from Wang and CAMLab about the nature of her position.

37.    As Wang and Harvard knew, Liang expected to be a fellow at CAMLab, conducting independent research. She relied on their representations in applying for and accepting the position.

38.    Wang and Harvard did not employ Liang as a fellow and did not allow her to do her research, to her significant financial detriment.

39.    Liang joined the CAMLab to build her academic career and enhance her ability to be accepted to top PhD programs. Wang was aware of her goals and represented that the position with CAMLab would give her the opportunity to produce the academic work required for admission into a top PhD program.

40.    Liang's work doing operational and administrative tasks at CAMLab did not build her academic resume or enhance her background to be accepted to a top PhD program.

41.    Liang had to pay the costs associated with visa applications and moving to Boston to accept the position with CAMLab.

42.    In addition to the professional setback in her scholarly career, she also lost the money she invested for visa applications and moving to Boston.  Had she known the true nature of the position, she would not have invested the money in the visa fees or in moving.

43.    Wang's and Harvard's representations about the position at CAMLab were knowingly false and misrepresented the actual position and were made knowing Liang would rely on them.

44.    By representing the job at CAMLab as a research position and later providing Liang with a secretarial position, Wang, and Harvard, deprived her of the benefits of the contract Liang entered into when she agreed to join CAMLab as a research fellow.

45.    Wang and Harvard benefitted from Liang's overtime work at CAMLab while depriving her of overtime compensation to which she was entitled.

46.     Wang and Harvard breached the agreement they had with Liang and were unjustly enriched because she joined the organization under false pretenses and provided them with significant work for which she should have been, but was not, paid overtime.

47.     Wang and CAMLab failed to exercise reasonable care or competence in communicating the information about the fellow position to Liang.

48.     As a direct and proximate result of the misrepresentations about her position at CAMLab, Liang suffered economic damages, including, but not limited to incurring expenses of moving to the Boston area to work for CAMLab, the loss of overtime compensation, the costs of her visa application, and the opportunity cost of years spent working for CAMLab when she was not furthering her academic career.

49.     Liang provided services to Harvard's CAMLab by performing administrative and secretarial work and to Wang by acting as his personal assistant.

50.     Harvard and Wang benefitted from these services in the form of retaining the unpaid overtime that was due to Liang for the performance of her services.

51.     Liang has equitable claims for damages from Wang and Harvard's failures to properly compensate her in quantum meruit for the reasonable value of her services.  Liang sustained damages in the form of unpaid overtime.

52.     Liang rendered services to Harvard and Wang with the reasonable expectation of being paid lawfully.

53.     They also knew that Liang did the administrative work for CAMLab program with the expectation of being paid for overtime as required by law, permitted her to act without objection.

54.    Wang and Harvard failed and refused to pay Liang overtime due for the services rendered.  As a direct and proximate result of Wang and Harvard's conduct, Liang suffered economic damages in that she was not paid overtime as was required by law.

55.    Harvard and Wang received a benefit conferred from Liang's work because of her unpaid overtime wages.  Harvard and Wang knew of and appreciated how they benefitted from Liang's work.  Their acceptance of the conferred benefit is inequitable without paying Liang for its value.

56.    Harvard and Wang received a windfall by requiring Liang to work an unlimited number of hours and failing to pay Liang the applicable minimum wage for her work in violation of the Massachusetts Minimum Wage law. Harvard and Wang knew of and appreciated how they benefitted from Liang's work and their failure to pay minimum wage.

57.    From June 2023 until September 2024, Liang worked as many hours Wang and Harvard wanted without complaint.  Wang and CAMLab were satisfied with Liang's performance during this period.

58.    Harvard, through Wang, renewed her position with CAMLab for an additional year in 2024.  After her employment was renewed, Liang continued to do the same sort of non-exempt administrative and operational work, continued to work more than 40 hours in a week without being paid overtime, and continued to be paid below the applicable minimum wage.

59.    On January 8, 2024 Lu asked Liang if her workload was heavy.  When Liang responded that it was, Lu threatened not to renew Liang's contract.

60.    In September 2024, Liang began repeatedly complaining about the long hours she was working without extra compensation to Harvard's Human Resources department, intentionally bypassing Campos. Lu and Wang were aware that she complained.

12

61.     A colleague warned Liang that Wang, Lu and CAMLab leadership was displeased that she had complained about how many unpaid hours she worked.

62.     On November 8, 2024, Liang had to go to the emergency room because the stress of all the unpaid overtime hours caused her to collapse.  After going to the emergency room, Liang reported to Campos that the long and unpaid hours had landed her in the emergency room. Campos discouraged Liang from making a formal, internal complaint with Harvard, outside CAMLab.  By discouraging Liang from making a formal, internal complaint with Harvard, but outside CAMLab, Campos acted deliberately and not in good faith.

63.     On January 16, 2025, Liang was diagnosed with major depressive disorder.  Her doctor instructed her to take immediate leave from work.

64.     Liang informed CAMLab about her diagnosis and that she needed to take a medical leave.  She took full time PFML leave under M.G.L. c. 175M §2.  Her full-time leave lasted for 39 days.

65.     During the full time PFLM leave, Wang required Liang work. Requiring Liang to work while on PFML leave violated the PFML, M.G.L. c. 175M §9 by interfering with her medical leave.

66.     On February 24th, 2025, Liang began intermittent PFML leave which lasted from February 24 to March 19, 2025.

67.     However, Wang ignored that she was on intermittent PFML leave and continued to assign her work that required her to work during her intermittent leave period, violating M.G.L. c. 175M §9 by interfering with her medical leave.

13

68.     Liang was not paid for the work that she performed during her intermittent PFML leave.  Failure to pay Liang for work performed during her intermittent leave violating FLSA 29 U.S.C. § 206.

69.     During March and April 2025, Liang repeatedly complained about being required to work during her medical leave and the failure to pay her for her work during leave

70.     On April 7, 2025, with Campos present, Wang ended Liang's employment.  He claimed he had restructured CAMLab.  This was not true.  It was a pretext for PFML retaliation and for retaliation for complaining about her unpaid overtime hours.

71.     After Liang was let go, several employees assumed her former duties and CAMLab hired two additional employees who assumed Liang's duties.  The structure of CAMLab remained almost identical, simply without Liang.

72.     Liang's contract was not renewed because Wang and Harvard retaliated against her for complaining about working overtime without being paid, for taking protected leave under the PFML, and for complaining about her violations of her leave rights under the PFML.

73.     Wang and Harvard never paid Liang the minimum wage for all hours worked for the benefit of Wang and Harvard as required by law.

<u>**COUNT I**</u>
<u>**Violation of the Fair Labor Standards Act 29 U.S.C. §215 and 216 (2)(b)**</u>
<u>**(Harvard)**</u>

As set forth above, and incorporated by reference here, the actions of Harvard violate the overtime, and retaliation provisions of the Fair Labor Standards Act 29 U.S.C. §215 and 216 (2)(b).

14

## COUNT II
### Violation of the Paid Family and Medical Leave Act, M.G.L. c. 175M, § 9.
### (Harvard)

As set forth above, and incorporated by reference here, the actions of Harvard violate the

Massachusetts Paid Family and Medical Leave Act M.G.L. c. 175M.

## COUNT III
### Violation of the Massachusetts Minimum Wage Act M.G.L. c. 151 §1
### (Harvard)

As set forth above, and incorporated by reference here, the actions of Harvard violate the

overtime, and retaliation provisions of the Massachusetts Minimum Wage Act M.G.L. c. 151 §1.

## COUNT IV
### Breach of contract
### (all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here,

constitute breaches of the contracts between the Defendants and Liang under Massachusetts

common law and Liang is entitled to damages based upon these contracts or upon quantum

meruit.

## COUNT V
### Breach of Covenant of Good Faith and Fair Dealing
### (all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here,

were a breach of the covenant of good faith and fair dealing implied in Liang's contracts with

Wang and Harvard to fulfill their obligations under each of these contracts.

15

## COUNT VI
### Promissory Estoppel
### (all Defendants)

The actions of the Defendants, as set forth above, and incorporated by reference here, made representations to Liang upon which they knew she reasonably relied to her detriment, unjustly enriching them when they failed to pay her for her services.

## COUNT VII
### Negligent Misrepresentation
### (all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here, failed to exercise reasonable care or competence in communication of information supplied to Liang to guide her in their business transactions upon which she justifiably relied, causing her economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Liang requests that this Court enter the following relief:

1. Entry of judgement in favor of Liang on all counts;

2. An award of damages under Massachusetts common law due to breaches of contract, negligent misrepresentation, promissory estoppel, breach of the covenant of good faith and fair dealing, in quantum meruit or any other consequential or economic damages;

3. An award of damages Liang is entitled to under the FLSA, 29 U.S.C.§207 and 29 USC §216(b), including, but not limited to:

   a. the amount of her unpaid overtime compensation,

   b. in an additional equal amount as liquidated damages,

   c. Attorneys' fees and costs as required by law;

16

4. An award of damages Liang is entitled to under the Massachusetts Minimum Wage Act M.G.L. c. 151 §1, including, but not limited to:

   a. Treble the amount of her unpaid wages

   b. Attorneys' fees and costs as required by law;

5. An award of damages under M.G.L. c. 175M:

   a. Compensate Liang for three times her lost wages and benefits;

   b. Damages for Liang's emotional distress;

   c. Payment of reasonable costs and attorneys' fees.

6. Interest as provided by law; and

7. Any further relief this Court deems just and proper.

## **JURY DEMAND**

Liang demands a trial by jury on all claims so triable.

Dated: June 24, 2026.

Respectfully submitted,
YIYI LIANG,
By her attorneys,

Rebecca G. Pontikes, BBO # 637157
Bryn A. Lagoy, BBO # 688368
Joseph Verran, BBO #713751
PONTIKES LAW, LLC
10 Tremont Street, 2nd Floor, Suite 207
Boston, MA 02108
(617) 357-1888
rpontikes@pontikeslawllc.com
bsfetsios@pontikeslawllc.com
jverran@pontikeslawllc.com